**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BYBERRY SERVICES AND SOLUTIONS, LLC D/B/A SNAP FITNESS, JA FITNESS 1, LLC D/B/A SNAP FITNESS, AND JA FITNESS 2, LLC D/B/A SNAP FITNESS, individually and on behalf of all others similarly situated,** | |
| | Civil Action No. |
| | **JURY TRIAL DEMANDED** |
| *Plaintiffs,* | |
| **v.** | |
| **MT. HAWLEY INSURANCE COMPANY** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiffs, Byberry Services and Solutions, LLC d/b/a Snap Fitness (hereinafter "Byberry"), JA Fitness 1, LLC d/b/a Snap Fitness (hereinafter "JA Fitness 1"), and JA Fitness 2, LLC d/b/a Snap Fitness (hereinafter "JA Fitness 2") (collectively, "Plaintiffs," unless otherwise indicated), individually and on behalf of the other members of the below-defined classes (the "Class," as more fully defined below), bring this class action against Defendant Mt. Hawley Insurance Company (hereinafter "Mt. Hawley") and in support thereof state the following:

### NATURE OF THE ACTION

1. Plaintiffs, Byberry, JA Fitness 1, and JA Fitness 2, operate Snap Fitness Centers which are 24 hours a day, seven days a week, 365 days a year gyms and health/fitness centers.

2. Plaintiff Byberry operates a Snap Fitness Center located in Columbus, New Jersey (hereinafter the "Byberry Premises").

1

3.      Plaintiff JA Fitness 1 operates a Snap Fitness Center located in Norton, Ohio (hereinafter the "JA Fitness 1 Premises").

4.      Plaintiff JA Fitness 2 operates a Snap Fitness Center located in Canal Fulton, Ohio.

5.      Plaintiffs Byberry, JA Fitness 1, and JA Fitness 2 are franchisees of Snap Fitness, Inc. and are three of approximately 800 Snap Fitness, Inc. franchisees throughout the United States.

6.      Snap Fitness, Inc. is a subsidiary of Lift Brands, Inc.

7.      Like all other Snap Fitness, Inc. franchisees, as well as other franchisees within Lift Brands, Inc., Plaintiffs, Byberry, JA Fitness 1, and JA Fitness 2 were required to enroll in Snap Fitness, Inc.'s Snap Asset Protection Plan (hereinafter "SAPP") when they became Snap Fitness, Inc. franchisees. Plaintiffs' respective Franchise Agreements explicitly required Plaintiffs to "participate in the current and any future insurance plan we establish for the benefit of the System and pay all required premiums due thereunder[.]" *See* **Exhibit "A"**, SNAP Fitness Franchise Agreement.

8.      Under the SAPP insurance program, all franchisees, including Plaintiffs, paid fees directly to the franchisor, Snap Fitness, Inc., a portion of which was allocated to cover the insurance premiums for the SAPP insurance program.  Snap Fitness, Inc. forwarded the premiums to the insurance provider, Defendant Mt. Hawley, who in exchange provided all the participating franchisees with identical insurance coverage **under a single policy**. *See* **Exhibit "B"**, Snap Fitness, Inc. Franchise Disclosure Document.

9.      The SAPP insurance program, which Plaintiffs and all other franchisees were enrolled in and covered under, included property insurance, specified that the property insurance

coverage provided by Mt. Hawley is an "All Risk" policy, and included Business Income coverage for the Actual Loss sustained up to at least twelve months ("the Policy"). The Policy provides for additional coverages and extra expense beyond that twelve month window. *See* **Ex. "B"**, at p. 13.

10.     The Policy identifies the Named Insureds under the policy as "Participating Franchise Programs of SAPP, et al" with a mailing address of Chanhassen, Minnesota. The insurance provided to Plaintiffs and the other Named Insureds by Defendant Mt. Hawley, through the SAPP insurance program, was intended to protect Plaintiffs and the other Named Insureds in the event that they had to suspend operations for reasons outside of the Named Insureds' control, or if Plaintiffs and the other Named Insureds had to act in order to prevent further property damage (hereinafter the "Mt. Hawley Policy"). *See* **Exhibit "C"**, SAPP Master Package Policy Form for January 1, 2020 to January 1, 2021.

11.     As a result of SARS-CoV-2 (hereinafter, called by the name of the disease that it causes, COVID-19, Plaintiffs' Premises, like all other Named Insureds' premises and facilities, suffered "direct physical loss or damage" as that term is used in the Policy. Covid-19 impaired the Named Insureds' premises and facilities and their intended business functions. In their current condition, Plaintiffs' and the Named Insureds' premises are not functional for their business purposes. In addition, the premises and facilities suffer direct physical loss or damage because of the presence of COVID-19.

12.     In Plaintiff Byberry's home of New Jersey, on March 16, 2020, Governor Phil Murphy mandated all gyms and health/fitness centers, including Plaintiff's Premises, be closed. In JA Fitness 1's and JA Fitness 2's home of Ohio, on March 22, 2020, the State of Ohio issued a civil authority order requiring the closure of non-essential businesses, including Plaintiffs'

gyms and health/fitness centers. Every state in the United States ultimately enacted closure orders mandating that all gyms and health/fitness centers, including Named Insureds' premises, be closed (the state closure orders are hereinafter collectively referred to as the "Closure Orders").

13. Plaintiffs were forced to suspend operations and business at their respective Premises due to the direct physical loss or damage caused by Covid-19 and the resultant closure orders issued by civil authorities in New Jersey, and Ohio. Similarly, all other Named Insureds were forced to suspend operations and business functions at their respective facilities due to and the direct physical loss or damage caused by Covid-19 and the resultant Closure Orders issued by their respective civil authorities.

14. Pursuant to the Policy, Plaintiff Byberry filed a claim for loss of business income caused by Covid-19, which Defendant Mt. Hawley received notice of on April 6, 2020. On May 4, 2020, Defendant Mt. Hawley sent Plaintiff a coverage declination letter stating that Plaintiff's business income loss was not covered under the Mt. Hawley Policy. *See* **Exhibit "D"**, Byberry Declination of Coverage Letter.

15. Pursuant to the Policy, Plaintiffs, JA Fitness 1 and JA Fitness 2, filed claims for loss of business income caused by Covid-19, which Defendant Mt. Hawley received notice of on April 1, 2020. On May 7, 2020, Defendant Mt. Hawley sent Plaintiffs, JA Fitness 1 and JA Fitness 2, a coverage declination letter stating that Plaintiffs' business income losses were not covered under the Mt. Hawley Policy. *See* **Exhibit "E"**, JA Fitness 1 and JA Fitness 2 Declination of Coverage Letter.

4

16. According to Defendant Mt. Hawley, Plaintiff Byberry did "not sustain direct physical loss of or damage to any property that would trigger your Business Income coverage." *See* **Exhibit "D"**.

17. Similarly, according to Defendant Mt. Hawley, Plaintiffs JA Fitness 1 and JA Fitness 2 "have not sustained direct physical loss of or damage to any property that would trigger your Business Income coverage." *See* **Exhibit "E"**.

18. Defendant Mt. Hawley has refused to pay any of the Named Insureds, including Plaintiffs, under Mt. Hawley's Business Income, Civil Authority, or Extra Expense coverages for losses suffered due to Covid-19, any executive orders by civil authorities that have required the necessary suspension of businesses, and any efforts to prevent further property damage. Indeed, Defendant Mt. Hawley has denied Plaintiffs' claims under the Mt. Hawley Policy.

19. Plaintiffs, on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and(b)(2) and (b)(3) bring this action for breach of contract and declaratory relief for Mt. Hawley's failure to honor its obligations to provide coverage for business interruption, civil authority, extra expense, and "sue and labor" claims.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendant and at least one member of the Class are citizens of different states, and because (a) the Class consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

21. Venue is proper in this District under 28 U.S.C. § 1391, because Defendant Mt. Hawley resides in this district and a substantial portion of the acts and conduct giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

22.     Plaintiff, Byberry Services and Solutions, LLC is a New Jersey corporation, with its principal place of business located at 23202 Columbus Road, Suite A, Columbus, New Jersey 08022.  Plaintiff paid premiums and was, therefore, an insured under the Policy for the coverage period January 1, 2020 to January 1, 2021.

23.     Plaintiff, JA Fitness 1, LLC is an Ohio corporation, with its principal place of business located at 3300 Greenwich Road, Norton, Ohio 44203.  Plaintiff paid premiums and was, therefore, an insured under the Policy for the coverage period January 1, 2020 to January 1, 2021.

24.     Plaintiff, JA Fitness 2, LLC is an Ohio corporation, with its principal place of business located at 2264 Locust Street South, Canal Fulton, Ohio 44614.  Plaintiff paid premiums and was, therefore, an insured under the Policy for the coverage period January 1, 2020 to January 1, 2021.

25.     Defendant, Mt. Hawley Insurance Company is an insurance company organized under the laws of the State of Delaware with its principal place of business in Peoria, Illinois. Defendant Mt. Hawley is authorized to write, sell, and issue insurance policies providing property and business income coverage.  At all times material hereto, Defendant Mt. Hawley conducted and transacted business through the selling and issuing of insurance policies, including but not limited to selling and issuing commercial property coverage to Plaintiff and all other Snap Fitness, Inc. franchisees.

## FACTUAL BACKGROUND

**A.      The SAPP Master Policy**

26.      All Snap Fitness, Inc. franchisees, including Plaintiffs, are required by the terms of their franchise agreements to enroll in the SAPP Master Package Policy.  In particular, for the coverage period for January 1, 2020 to January 1, 2021, the SAPP program members, including Plaintiffs, were covered by Policy No. MPE0001470 ("the Policy") issued by Defendant Mt. Hawley Insurance Company.

27.      The Policy covers all other Named Insureds, which are participating franchises of Steele Fitness, LLC, YogaFit Franchising, LLC, Farrell's Extreme Bodyshaping, Inc. and SF TMF, LLC, as well as other Lift Brand, Inc. franchisees, including 9Round Franchising, LLC.

28.      In total, the Mt. Hawley Policy covers over 1,500 fitness franchises throughout the United States, all of which are similarly situated to the named Plaintiffs for the purposes of this claim.

29.      In exchange for a premium, the Policy provides Business Income coverage for the Actual Loss Sustained up to at least twelve months. The Policy's Business Income and Extra Expense (Actual Loss Sustained) Coverage Form includes the following coverage grant: "We will pay for the actual loss of 'earnings' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or damage to property at the location(s) scheduled in this policy…".  **Ex. "C"**.

30.      The Mt. Hawley Policy defines "earnings" as the "[n]et income (not profit or loss before income taxes) you would have earned or incurred; and Your continuing normal operating expenses, including payroll, incurred." *Id.*

7

31.     The Mt. Hawley Policy thus provides coverage for up to at least twelve months of Plaintiff's actual revenue loss in the event of physical loss of or damage to Plaintiff's Premises and the Named Insureds' properties.

32.     The Policy also provides Civil Authority coverage, and states: "We will pay for the loss of 'earnings' you sustain…caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss." *Id.*

33.     The Policy provides Extra Expense coverage, and states: "We will pay your reasonable 'extra expense' necessary to avoid or minimize the suspension of business and to continue 'operations[.]'. *Id.*

34.     The Policy's Extra Expense coverage further states: "We will pay your reasonable 'extra expense' necessary to minimize the suspension of business if you cannot continue 'operations.'" *Id.*

35.     The Policy defines "extra expense" as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused or resulting from a Covered Cause of Loss."

36.     In the Policy, under a section titled "Duties in the Event of Loss of Earnings," Defendant Mt. Hawley mandated that its insureds must, in the event of loss of earnings, "[t]ake all reasonable steps to protect the property at the scheduled location(s) from further damage[]" and to "keep a record of your expenses…." *Id.*   This is commonly referred to as "Sue and Labor" coverage.

37.    Plaintiffs' and the other Named Insureds' losses caused by Covid-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Civil Authority, Extra Expense, and Sue and Labor provisions of the Policy.

**B.    Plaintiffs Suffered a Covered Loss Under the Policy**

38.    Plaintiffs and the other Named Insureds were forced to suspend operations and business at their respective facilities due to the direct physical loss or damage caused by Covid-19 and the resultant Closure Orders issued by civil authorities across the country.

39.    Pursuant to the terms of the Policy, Plaintiffs filed claims for loss of business income caused by Covid-19, which Defendant Mt. Hawley received notice of Plaintiffs, JA Fitness 1's and JA Fitness 2's, claims on April 1, 2020, and of Plaintiff Byberry's claim on April 6, 2020.

40.    On May 4, 2020, Defendant Mt. Hawley sent Plaintiff Byberry a coverage declination letter stating that Plaintiff's business income loss was not covered under the Policy. According to Defendant Mt. Hawley, Plaintiff did "not sustain direct physical loss of or damage to any property that would trigger your Business Income coverage." Ex. "D."

41.    On May 7, 2020, Defendant Mt. Hawley sent Plaintiffs, JA Fitness 1 and JA Fitness 2, a coverage declination letter stating that Plaintiffs' business income loss was not covered under the Policy. According to Defendant Mt. Hawley, Plaintiffs "have not sustained direct physical loss of or damage to any property that would trigger your Business Income coverage."

42.    Defendant Mt. Hawley is wrong, and loss caused by virus or disease constitutes direct physical loss or damage to property, as the insurance industry has recognized since at least 2006.

9

43. When preparing the so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. ***When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses***.

44. In the Business Income and Extra Expense (Actual Loss Sustained) Coverage Form, in addition to agreeing to pay for the actual loss of business income sustained, Defendant Mt. Hawley also agreed to pay necessary Extra Expense that its insureds, including Plaintiff, incurred during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the covered property.

45. In the Business Income and Extra Expense (Actual Loss Sustained) Coverage Form, Defendant Mt. Hawley also agreed to provide Civil Authority coverage, stating: "We will pay for the loss of 'earnings' you sustain…caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss." *Id.*

46. The Business Income and Extra Expense (Actual Loss Sustained) Coverage Form, Section (D)(2) titled "Duties In The Event of Loss of Earnings" instructs Plaintiff and all insureds that "You ***must*** see that the following are done in the event of a loss of 'earnings':…(d) Take all reasonable steps to protect the property at the scheduled location(s) from further damage." **Ex. "C"** (emphasis added).

10

47.     Losses caused by Covid-19 and the related Closure Orders issued by civil authorities triggered the Business Income and Extra Expense (Actual Loss Sustained) coverage provisions of the Policy.

48.     Despite this, Defendant Mt. Hawley has refused to pay any business income loss, civil authority, extra expense, and/or sue and labor claims for under the Policy, and, indeed, has denied Plaintiffs' business income loss claim under the Policy.

49.     Covid-19 has caused civil authorities throughout the country to issue Closure Orders requiring the suspension of businesses, specifically gyms and health/fitness centers, including Plaintiffs and all other Named Insureds.

50.     Covid-19 caused "direct physical loss of or damage to" Plaintiffs' Premises and all other Named Insureds' properties under the Policy, by impairing Plaintiffs' Premises and their business functions and by causing a necessary suspension of operations during a period of restoration.

51.     Covid-19 has rendered Plaintiffs' and the other Named Insureds' properties unfit for their intended business function.

52.     In their current condition, Plaintiffs' and the other Named Insureds properties are not functional for their business purposes because of the changed physical environment due to Covid-19.

53.     Covid-19 also presented an imminent threat of immediate damage or loss to Plaintiffs' and the other Named Insureds' properties, forcing Plaintiffs and the other Named Insureds to take costly action to prevent further damage or loss.

54.     Closure Orders around the country have prohibited access to Plaintiffs' and the other Named Insureds' facilities and properties and the areas immediately surrounding said

11

facilities and properties, in response to dangerous physical conditions resulting from a Covered Cause of Loss, Covid-19.

55.     As a result of the actual and/or imminent threat of physical loss or damage caused by Covid-19 and the Closure Orders, Plaintiffs and other Class members lost Business Income and incurred Extra Expense.

**C.     The Insurance Industry's "Virus Exclusion" is Not in the SAPP Policy**

56.     Many insurance policies issued in the United States that cover business interruption (though not the Policy at issue) contain an exclusion identical or very similar to the Insurance Services Office ("ISO") Form CP 01 40 07 06, adopted in 2006 and titled "Amendatory Endorsement – Exclusion of Loss Due to Virus or Bacteria."

57.     The ISO Form CP 01 40 07 06 exclusion and those similar to it typically state: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

58.     By virtue of ISO Form CP 01 40 07 06, Mt. Hawley unquestionably knew exactly how to exclude coverage for loss caused by or resulting from any virus, ***yet Mt. Hawley chose not to do so***.  Indeed, ***the Policy contains no such virus exclusion***; the word "virus" does not appear anywhere in the Policy outside the context of a computer virus.

59.     The Policy in no way excludes or limits coverage for losses caused by viruses, such as Covid-19.

<u>**CLASS ACTION ALLEGATIONS**</u>

60.     Plaintiffs bring this action pursuant to Rules 23(a), (b)(2) and (b)(3), (or, in the alternative, Rule 23(c)(4)) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

61.     Plaintiffs seek to represent a Rule 23(b)(2) Class defined as:

All persons and entities that are insureds under the SAPP Master Package Policy Form January 1, 2020 to January 1, 2021 Policy No. MPE0001470 issued by Defendant Mt. Hawley Insurance Company.

62.     Plaintiffs seek to represent a Rule 23(b)(3) Class defined as:

All persons and entities that: (a) are insureds under the  SAPP Master Package Policy Form coverage period January 1, 2020 to January 1, 2021, Policy No. MPE0001470 issued by Defendant Mt. Hawley Insurance Company; (b) suffered a suspension or closure of business related to Covid-19, (c) were denied business interruption, civil authority, extra expense and/or sue and labor insurance coverage.

Excluded from Classes are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

63.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1)**.  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe there are hundreds of members of each Class, the precise number of Class members is unknown to Plaintiffs but is believed to be in excess of 1,500.  Regardless, the precise number of Class members in each Class can be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

64.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a. whether the Class suffered a covered loss based on the Policy issued to Class members;

b. whether Mt. Hawley wrongfully denied all claims based on Covid-19;

c. whether Mt. Hawley's Business Income coverage applies to a suspension of business caused by Covid-19;

d. whether Mt. Hawley's Civil Authority coverage applies to loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of Covid-19;

e. whether Mt. Hawley's Extra Expense coverage applies to efforts to minimize a loss caused by Covid-19;

f. whether Mt. Hawley's Sue and Labor coverage applies to efforts to prevent further damage; and,

g. whether Mt. Hawley has breached its contract(s) of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to Covid-19 and the related closures;

65. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and all Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, or Sue and Labor coverages under the Policy. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

66. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

14

67. **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

68. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT – BUSINESS INCOME COVERAGE
**(Brought on Behalf of the Rule 23(b)(3) Class Only)**

69. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-68 of this Complaint.

70. The Policy is a contract under which Defendant Mt. Hawley was paid premiums in exchange for its promise to pay Plaintiffs' and the other Class members' losses for claims covered by the policy.

15

71.     In the Business Income and Extra Expense (Actual Loss Sustained) Coverage Form, Mt. Hawley agreed to "pay for the actual loss of 'earnings' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

72.     The Policy defines "earnings" as the "[n]et income (not profit or loss before income taxes) you would have earned or incurred; and Your continuing normal operating expenses, including payroll, incurred."

73.     The Policy defines "operations" as "the type of your business activities occurring at the scheduled location(s)."

74.     The Policy defines "period of restoration" as "the period of the time that: (a) Begins seventy-two (72) hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the scheduled location(s); and (b) Ends on the date when the property at the scheduled location(s) should be repaired, rebuilt or replaced with reasonable speed and similar quality."

75.     The Policy covers Business Income losses for up to at least twelve months.

76.     Covid-19 caused direct physical loss or damage to Plaintiffs' respective Premises and the other Class members' covered properties, requiring suspension of operations at the aforementioned Premises and covered properties.  Losses caused by Covid-19 thus triggered the Business Income provision of Plaintiffs' and the other Class members' Policy.

77.     Plaintiffs and the other Class members have complied with all applicable provisions of the Policy and/or those provisions have been waived by Mt. Hawley or Mt. Hawley is estopped from asserting them, and yet Mt. Hawley has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

78. By denying coverage for any Business Income losses incurred by Plaintiffs and the other Class members in connection with the Covid-19 pandemic, Mt. Hawley has breached its coverage obligations under the Policy.

79. As a result of Mt. Hawley's breaches of the Policy, Plaintiffs and the other Class members have sustained substantial damages for which Mt. Hawley is liable, in an amount to be established at trial.

## COUNT II
## <u>BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE</u>
### (Brought on Behalf of the Rule 23(b)(3) Class Only)

80. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-68 of this Complaint.

81. The Policy is a contract under which Defendant Mt. Hawley was paid premiums in exchange for its promise to pay Plaintiffs' and the other Class members' losses for claims covered by the policy.

82. Mt. Hawley promised to "pay for the loss of 'earnings' you sustain…caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss."

83. The Closure Orders enacted by state governors across the United States triggered the Civil Authority provision under the Policy.

84. Plaintiffs and other Class members have complied with all applicable provisions of the Policy, and/or those provisions have been waived by Mt. Hawley or Mt. Hawley is estopped from asserting them, and, yet, Mt. Hawley has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

85.     By denying coverage for any business losses incurred by Plaintiffs and the other

Class members in connection with the Closure Orders and the Covid-19 pandemic, Mt. Hawley

has breached its coverage obligations under the Policy.

86.     As a result of Mt. Hawley's breaches of the Policy, Plaintiffs and the other Class

members have sustained substantial damages for which Mt. Hawley is liable, in an amount to be

established at trial.

## COUNT III
## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
### (Brought on Behalf of the Rule 23(b)(3) Class Only)

87.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs

1-68 of this Complaint.

88.     The Policy is a contract under which Defendant Mt. Hawley was paid premiums

in exchange for its promise to pay Plaintiffs and the other Class members' losses for claims

covered by the policy.

89.     Mt. Hawley promised to "pay your reasonable 'extra expense' necessary to avoid

or minimize the suspension of business and to continue 'operations[.]'"

90.     The Policy defines "extra expense" as "necessary expenses you incur during the

'period of restoration' that you would not have incurred if there had been no direct physical loss

or damage to property caused or resulting from a Covered Cause of Loss."

91.     Due to Covid-19 and the Closure Orders, Plaintiffs and the other Class members

incurred Extra Expense at properties covered under the Policy.

92.     Plaintiffs and the other Class members have complied with all applicable

provisions of the Policy, and/or those provisions have been waived by Mt. Hawley or Mt.

Hawley is estopped from asserting them, and, yet, Mt. Hawley has abrogated its insurance

coverage obligations pursuant to the Policy's clear and unambiguous terms.

93.     By denying coverage for any business losses incurred by Plaintiffs and the other Class members in connection with the Closure Orders and the Covid-19 pandemic, Mt. Hawley has breached its coverage obligations under the Policy.

94.     As a result of Mt. Hawley's breaches of the Policy, Plaintiffs and the other Class members have sustained substantial damages for which Mt. Hawley is liable, in an amount to be established at trial.

## COUNT IV
## BREACH OF CONTRACT – SUE AND LABOR COVERAGE
### (Brought on Behalf of the Rule 23(b)(3) Class Only)

95.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-68 of this Complaint.

96.     The Policy is a contract under which Defendant Mt. Hawley was paid premiums in exchange for its promise to pay Plaintiffs and the other Class members' losses for claims covered by the policy.

97.     The Business Income and Extra Expense (Actual Loss Sustained) Coverage Form, Section (D)(2) titled "Duties In The Event of Loss of Earnings" instructs Plaintiffs and all insureds that "You **must** see that the following are done in the event of a loss of 'earnings':…(d) Take all reasonable steps to protect the property at the scheduled location(s) from further damage." **Ex. "C"** (emphasis added).

98.     Due to Covid-19 and the Closure Orders, Plaintiffs and the other Class members incurred expenses associated with taking all reasonable steps to protect their respective properties covered under the Policy.

99.     Plaintiffs and the other Class members have complied with all applicable provisions of the Policy, and/or those provisions have been waived by Mt. Hawley or Mt.

Hawley is estopped from asserting them, and yet Mt. Hawley has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

100.    By denying coverage for any business losses incurred by Plaintiffs and the other Class members in connection with the Closure Orders and the Covid-19 pandemic, Mt. Hawley has breached its coverage obligations under the Policy.

101.    As a result of Mt. Hawley's breaches of the Policy, Plaintiffs and the other Class members have sustained substantial damages for which Mt. Hawley is liable, in an amount to be established at trial.

## COUNT VI
## DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Rule 23(b)(2) Class Only)

102.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-68 of this Complaint.

103.    The Policy is a contract under which Defendant Mt. Hawley was paid premiums in exchange for its promise to pay Plaintiffs and the other Class members' losses for claims covered by the Policy.

104.    Plaintiffs and the other Class members have complied with all applicable provisions of the Policy and/or those provisions have been waived by Mt. Hawley or Mt. Hawley is estopped from asserting them, and, yet, Mt. Hawley has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

105. Mt. Hawley has denied claims related to Covid-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

106. An actual case or controversy exists regarding Plaintiffs' and the other Class members' rights and Mt. Hawley's obligations under the Policy to reimburse Plaintiffs and the other Class members for the full amounts of Business Income losses that they each incurred in connection with suspension of their businesses stemming from the Covid-19 pandemic.

107. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Class members seek a declaratory judgment from this Court declaring the following:

a. That Plaintiffs' and the other Class members' losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the Covid-19 pandemic are insured losses under the Policy; and

b. That Mt. Hawley is obligated to pay Plaintiffs and the other Class members for the full amount of the covered losses incurred and to be incurred in connection with the suspension of business and/or the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the Covid-19 pandemic.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

a. Entering an order certifying the proposed Class as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Class Counsel;

b. Entering judgment on Counts I-III in favor of Plaintiffs, Byberry Services and Solutions d/b/a Snap Fitness, JA Fitness 1, LLC d/b/a Snap Fitness, JA Fitness 2, LLC d/b/a

Snap Fitness, and the other Class members; and awarding damages for breach of contract in an amount to be determined at trial;

      c.      Entering declaratory judgments in favor of Plaintiffs and the other Class members as follows:

          i.      Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the Covid-19 pandemic are insured losses under the Policy; and

         ii.      Mt. Hawley is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to Covid-19, the Closure Orders, and the necessary interruption of their businesses stemming from the Covid-19 pandemic.

      d.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

      e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

      f.      Ordering such other and further relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by a jury on all claims so triable.

Dated: June 8, 2020             Respectfully submitted,

                                 */s/ Adam J. Levitt*
                                 Adam J. Levitt
                                 Daniel R. Ferri
                                 Mark Hamill
                                 **DiCELLO LEVITT GUTZLER LLC**
                                 Ten North Dearborn Street, Sixth Floor
                                 Chicago, Illinois 60602
                                 Tel: (312) 214-7900
                                 alevitt@dicellolevitt.com
                                 dferri@dicellolevitt.com
                                 mhamill@dicellolevitt.com

Mark A. DiCello
Kenneth P. Abbarno*
Mark Abramowitz*
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Tel:  (440) 953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

Robert J. Mongeluzzi*
Jeffrey P. Goodman*
Samuel B. Dordick*
**SALTZ MONGELUZZI & BENDESKY, P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania  19103
Tel:  (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com

Patrick Howard*
**SALTZ MONGELUZZI & BENDESKY, P.C.**
120 Gibraltar Road, Suite 218
Horsham, Pennsylvania  19044
Tel:  (215) 496-8282
phoward@smbb.com

Mark Lanier*
Alex Brown*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Tel:  (713) 659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com

Timothy W. Burns*
Jeff. J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930

23

Madison, Wisconsin  53703
Tel:  (608) 286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Tel:  (713) 917-0024
Douglas.daniels@dtlawyers.com

***Counsel for Plaintiffs***
***and the Proposed Classes***

*Applications for admission *pro hac vice*
 to be filed.

24