IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYBERRY SERVICES AND SOLUTIONS, LLC, *et al.*, | |
| Plaintiffs, | Case No. 20-cv-03379 |
| v. | Judge Mary M. Rowland |
| MT. HAWLEY INSURANCE COMPANY, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Byberry Services and Solutions, LLC, JA Fitness 1, LLC, and JA Fitness 2, LLC bring this action against Mt. Hawley Insurance Company individually and on behalf of a class. The plaintiffs allege that Mt. Hawley breached its insurance contract with them by failing to compensate them for losses that arose during the COVID-19 pandemic. Mt. Hawley asserts that the complaint fails to state a claim and has moved for its dismissal. For reasons stated herein, the defendant's Motion to Dismiss [49] is granted.

**I. Background**

The following factual allegations are taken from the Second Amended Complaint (Dkt. 43). In evaluating whether they state a legal claim under Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true. *See W. Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670, 675 (7th Cir. 2016).

1

The plaintiffs operate franchises of Snap Fitness Center, a 24-hour gym. Dkt. 43, Compl. ¶¶ 1,6. Byberry Services and Solutions, LLC operates a Snap in Columbus, New Jersey, while JA Fitness 1, LLC and JA Fitness 2, LLC each operate a gym in Ohio. *Id*. at ¶¶ 3-5. Mt. Hawley Insurance Company is incorporated in Delaware and its principal place of business is Peoria, Illinois.[1] *Id*. at ¶ 36

Snap Fitness has about 800 franchises total. *Id*. at ¶ 6 As franchisees, the plaintiffs are required to participate in Snap's insurance plan. *Id*. at ¶ 8. Mt. Hawley insures all Snap franchises under a single "all risk" policy. *Id*. at ¶ 15. The policy provided includes business income coverage, extra expense coverage, civil authority coverage, and so-called "sue and labor" coverage. *Id*. at ¶¶ 17-21.

The business income section of the policy states: "We will pay for the actual loss of 'earnings' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or damage to property at the location(s) scheduled in this policy." *Id*. at ¶ 44. The "period of restoration" is defined as the period that "(a) [b]egins seventy-two (72) hours after the time of direct physical loss or damage . . . ; and (b) Ends on the date when the property at the scheduled location(s) should be repaired, rebuilt or replaced with reasonable speed and similar quality." *Id*. at ¶ 118. The policy covers up to twelve months of lost income. *Id*. Mt. Hawley also agreed to "pay your reasonable

---

[1] Plaintiffs assert venue by saying that Mt. Hawley resides in the Northern District of Illinois. Dkt. 43, Compl. ¶ 32. In fact, Peoria is located in the Central District of Illinois, not the Northern. By failing to raise venue in its Motion to Dismiss, however, Mt. Hawley has waived the issue. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

'extra expense' necessary to avoid or minimize the suspension of business and to continue 'operations.'" *Id.* at ¶ 50.

In addition, the policy covers against certain losses that were the product of government decree. The civil authority provision provides that the insurer "will pay for the loss of 'earnings' you sustain . . . caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss." *Id.* at ¶ 53. Finally, the policy also states that the insured will "[t]ake all reasonable steps to protect the property at the scheduled location(s) from further damage" and "keep a record of your expenses," the plaintiffs describe the expenses associated with this requirement as "sue and labor" coverage. *Id.* at ¶ 54. Notably, the policy does not contain an explicit exclusion of losses caused by viruses or communicable diseases, a relatively common provision. *Id.* at ¶¶ 22, 99.

On March 16, 2020, in response to the growing COVID-19 pandemic, the governor of New Jersey ordered that all gyms close that evening. *Id.* at ¶ 61. The next day, the Ohio Department of Health ordered the closure of all non-essential businesses, including gyms, by March 22. *Id.* at ¶ 64. In response to the orders and the pandemic, the plaintiffs closed their gyms. *Id.* at ¶ 54.

On May 26, gyms in Ohio were permitted to reopen, albeit with significant safety restrictions including limited capacity. *Id.* at ¶ 65. JA Fitness 1 and 2 reopened after having been closed for roughly two months, although, consistent with the state rules, they operated at limited capacity. *Id.* at ¶ 9. Months later, on September 1, 2020,

3

gyms were permitted to reopen in New Jersey at 25% capacity. *Id.* at ¶ 61. Byberry reopened that day. *Id.* at ¶ 9.

In response to the pandemic and government requirements, all the plaintiffs made significant changes to their gyms. For example, they reduced the amount of equipment to allow for better distancing, installed plexiglass at the front desk, removed furniture from the waiting room, limited the use of group exercise rooms, and hired more staff for cleaning, to pick a few examples. *See Id.* at ¶¶ 76-83. Recently, an employee who works at both JA Fitness locations tested positive for COVID-19. *Id.* at ¶ 70. Similarly, a member of the Byberry gym was diagnosed with the disease. *Id.* at ¶ 72. In response to the incidents, the gyms underwent costly and time-consuming "deep cleanings." *Id.* at ¶¶ 71-72

On April 1 and April 6 of 2020, Mt. Hawley received claims for loss of income from JA Fitness 1 and 2 and Byberry, respectively. *Id.* at ¶ 93. In May of that year, Mt. Hawley sent letters to the franchisees declining to cover the lost income. *Id.* at ¶¶ 94-95. The plaintiffs then filed a class-action suit in this court, seeking damages for breach of contract and a declaratory judgment that the plaintiffs' losses arising from the closure orders and the COVID-19 pandemic are covered by the insurance policy. *Id.* at ¶ 150. The defendants have moved to dismiss the Complaint for failing to state a claim.

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to

dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

In their Complaint, the plaintiffs seek damages under the policy's business income and extra expense coverage; its civil authority coverage; and its sue and labor coverage. The defendant asserts that none of these provisions apply to losses associated with the COVID-19 pandemic and also that recovery is barred by several exclusions in the contract. Because the losses do not fall within the coverage of the policy, we need not address the exclusions in this case.

In interpreting the contract's language, the parties do not dispute that Minnesota law, where Snap Fitness is headquartered, applies. Under Minnesota law, interpreting an insurance contract is a question of law.[2] *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997). Insurance polices are read as a whole, with unambiguous terms given their plain meaning. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*, 926 F.3d 1014, 1021 (8th Cir. 2019). Ambiguity is construed against the insurer, consistent with the insured's reasonable expectations. *Id*. "An insured party bears the initial burden of demonstrating coverage, and the insurer then bears the burden of establishing an applicable exclusion." *Rest. Recycling, LLC v. Employer Mut. Cas. Co.*, 922 F.3d 414, 417 (8th Cir. 2019) (citing *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013)).

---

[2] Plaintiffs assert determining choice of law is "premature" but apply Minnesota law in their analysis. Dkt. 55 at 13.

6

### A. The Plaintiffs' Claims for Business Income Fail

The insurance policy at issue in this case covers lost business income "caused by direct physical loss of or damage to property." Byberry and JA advance two grounds for their business income and extra expense claims. They argue that the state-mandated shutdowns created a "direct physical loss" of their property. And they argue that COVID-19 physically contaminated their gyms, damaging their property. Both theories fail.

*State Orders*

In their Complaint and Response, the plaintiffs invoke the state-mandated shutdowns as a cause of their lost business income. Courts throughout the country have held, however, that state-ordered shutdowns are not a basis for a lost business income claim. *See G.O.A.T. Climb and Cyro, LLC v. Twin City Fire Ins. Co.*, 2021 WL 2853370, at *4 (N.D. Ill. July 8, 2021) (collecting numerous cases). Most relevant here is a recent opinion by the Eighth Circuit. In *Oral Surgeons, P.C. v. Cincinnati Insurance Co.*, the court held that an Iowa oral surgery business could not recover lost business income caused by the governor of Iowa imposing restrictions on non-emergency procedures. No. 20-3211, 2021 WL 2753874, at *1 (8th Cir. July 2, 2021). The court found that a government shutdown did not constitute a "physical loss" or "physical damage" because there was no physical alteration, contamination, or destruction of the property. *Id.* at *2. Mere loss of use, then, was insufficient to state a claim. *Id.* This view was reinforced by the "period of restoration" language, which states that the "policy provides coverage until property 'should be repaired, rebuilt or

7

replaced.'" *Id.* The language "assumes physical alteration of the property, not mere loss of use." *Id.*

In support of its reasoning, the Eighth Circuit relies upon its Minnesota law precedent, which it states is equivalent to Iowa law on this issue. *Id.* The court explicitly rejects the idea that coverage is "established *whenever* property cannot be used for its intended purpose." *Id.* (quoting *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005)). If the court found government regulation in itself to be a basis for recovery, then it "would render the word 'physical' meaningless." *Id.* (quoting *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006)).

Here too, permitting recovery based on the states' shutdown orders would effectively eliminate the word "physical" from the contract. And while the plaintiffs did physically alter their property in response to the orders—installing plexiglass among other changes—such measures do not qualify as a physical loss. *See G.O.A.T. Climb and Cyro, LLC*, 2021 WL 2853370, at *4; *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) (rejecting the argument that "'repairs' to the property, including installing special air filters, plexiglass partitions and protection shields," qualify as a physical loss). The Court follows the Eighth Circuit's precedent and the plain language of the policy in finding that the shutdown is not covered by the policy's business income and extra expense provisions.

8

*Contamination*

Alongside the government order, the plaintiffs assert a second theory for coverage. Their loss in income is the result of the COVID-19 virus "infesting" their property, causing it to be lost or damaged. For support, the plaintiffs cite Minnesota case law finding that the contamination of a product or property may be covered by business income provisions. Under this theory, the owners of oats contaminated with pesticides, rendering them unfit for sale, and of a building filled with newly-released aesbestos fibers have both suffered a "direct physical loss." *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997). Even without "tangible injury to the physical structure of a building," the nature of asbestos is that the "building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants." *Sentinel*, 563 N.W.2d at 300. The same is true, the plaintiffs assert, of COVID-19.

Mt. Hawley raises two major issues with this argument. First, it says that the claim is not ripe because the possibility of infestation was not raised by the plaintiffs when they submitted their initial insurance claims. Second, it says that even if the theory is ripe, it fails to state a claim. To resolve the issue, the Court need only consider this second argument.

As an initial matter, it is unclear that that the presence of COVID-19 would even constitute contamination under Minnesota law. Unlike asbestos or pesticides, "there can be no dispute that the virus can be easily eliminated with routine cleaning

9

procedures." *Bachman's Inc. v. Florists' Mut. Ins. Co.*, No. CV 20-2399 (MJD/DTS), 2021 WL 981246, at *4 (D. Minn. Mar. 16, 2021). If "routine cleaning . . . eliminates the virus on surfaces," it is hard to believe that the property has been "lost." *Id.* (quoting *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883 (S.D.W. Va. 2020)).

Even if COVID-19 could lead to contamination, the plaintiffs have failed to adequately plead its presence on their property. In the Complaint, the plaintiffs repeatedly assert that they have suffered losses "due to COVID-19." *E.g.,* Dkt. 43, Compl. ¶¶ 23, 24, 26, 29, 55. When they provide more detail, however, they state that COVID-19 has caused their loss because "[i]f they were to conduct business as usual, the disease and virus would show up and people would get sick." *Id.* at ¶ 47. This, of course, suggests that the virus is not actually present at the businesses, and that the shut-down was intended to prevent contamination, not the result of it. Just a couple paragraphs later, this statement is apparently contradicted by the claim that "[t]he presence of viruses or disease has resulted in physical damage to property," but no concrete allegations are offered in support. *Id.* at ¶ 49.

Later, the Complaint asserts that COVID-19's contamination of the gyms impaired the businesses after they reopened. In support, the Complaint alleges that an employee at the JA locations and a member of the Byberry gym both tested positive for COVID-19 sometime after having visited the gym, requiring the gyms to conduct deep cleans. *Id.* at ¶¶ 70-73. This is the closest the Complaint comes to

10

providing factual allegations that would suggest that COVID-19 had physically contaminated the plaintiffs' gyms.

In *Torgerson Properties, Inc. v. Continental Casualty Co.*, the Federal District Court of Minnesota held that "general statements" such as: "[w]e believe that one employee has tested positive for the virus" and: "[w]e believe that one visitor has tested positive for the virus" are "insufficient to establish the sort of contamination that might give rise to a claim for 'direct physical loss' under the policy." No. CV 20-2184 (PAM/KMM), 2021 WL 615416, at *2 (D. Minn. Feb. 17, 2021). This Court agrees. Someone passing through a building while possibly infected hardly amounts to evidence of "contamination." This is especially true considering the visits happened after the gyms reopened—any contamination that resulted could not have caused the gym shutdowns. The facts alleged in the Complaint simply fail to establish COVID-19 contamination above "the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

In their briefing, the plaintiffs argue that more detailed information about the infected visitors cannot be supplied without violating HIPAA. But the issue is not the details about the individuals, but the speculative leap from their presence at the gym to an assertion of COVID-19 "contamination" stretching back months. Similarly, common alterations to the properties after reopening do not give rise to an inference of contamination, especially when a more straightforward explanation—that these changes were intended to limit the risk posed by infected people who might visit the gyms going forward—is readily at hand. The Court is left with "mere labels and

11

conclusions," and these are insufficient to state a claim. *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016).

The state orders cannot serve as a basis for recovery under the business income provision. Even if COVID-19 contamination can, the allegations here are insufficient to state a claim. As a result, the plaintiffs' claim for violations of the business income and extra expense provisions are dismissed without prejudice.

### B. Civil Authority Coverage Does Not Apply

The plaintiffs also say that their lost business income is covered by the policy's civil authority coverage. Civil authority coverage "will pay for the loss of 'earnings' you sustain . . . caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss." Dkt. 43, Compl. ¶ 53. In other words, coverage only applies when physical damage to property leads the government to prohibit access to the insured property. *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020).

The plaintiffs argue that the state lockdown orders qualify as an "action of civil authority" leading to coverage. But the plaintiffs do not identify any surrounding properties that were physically damaged and do not establish that that damage led to the state-wide orders. Instead, the Complaint notes that the New Jersey closure order was "part of the State's mitigation strategy to combat COVID-19 and reduce the rate of community spread." Dkt. 43, Compl. ¶ 62. The civil authorities were not motivated by physical damage to property, but by the state-wide health crisis. They

12

acted in response to a harm to people, not property. The mere fact of a state-wide order, without specific allegations tying its origin to the physical damage of non-covered property, cannot establish coverage. This is consistent with the overwhelming weight of cases that have been decided since the pandemic. *See, e.g.*, *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, No. 20 C 4249, 2020 WL 7889047, at *4 (N.D. Ill. Dec. 22, 2020); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20CV3350PGGRWL, 2021 WL 1034259, at *14 (S.D.N.Y. Mar. 18, 2021); *Spottswood Companies, Inc. v. Zurich Am. Ins. Co.*, No. 4:20-CV-10077-KMM, 2021 WL 2515255, at *6 (S.D. Fla. June 14, 2021). The plaintiffs' civil authority claim is dismissed without prejudice.

### C. The Sue and Labor Claims Also Fail

Finally, the plaintiffs assert a "sue and labor" claim against Mt. Hawley. Sue and labor covers the expenses incurred when the insured "[t]ake all reasonable steps to protect the property at the scheduled location(s) from further damage" and "keep a record of [the insured's] expenses." Dkt. 43, Compl. ¶ 54. Both parties agree, however, that this provision only comes into issue when a direct physical loss of or damage to property has been established. As described above, the plaintiffs have not alleged a direct physical loss of or damage to their covered property. The sue and labor claim is thus dismissed without prejudice.

### IV. Conclusion

For the stated reasons, the Mt. Hawley's Motion to Dismiss [49] is granted. The plaintiffs' claims are dismissed without prejudice. While the Court believes amending

13

the complaint would be futile, it will allow the plaintiffs one opportunity to amend. Plaintiffs have until August 9, 2021 to file an amended complaint. If the plaintiffs do not do so, this dismissal will convert automatically to a dismissal with prejudice and the Court will enter judgment.

E N T E R:

Dated: July 19, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge