IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYBERRY SERVICES AND SOLUTIONS, LLC, *et al.*, | |
| Plaintiffs, | Case No. 20-cv-03379 |
| v. | Judge Mary M. Rowland |
| MT. HAWLEY INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Byberry Services and Solutions, LLC, JA Fitness 1, LLC, and JA Fitness 2, LLC bring this action against Mt. Hawley Insurance Company individually and on behalf of a class. The plaintiffs allege that Mt. Hawley breached its insurance contract with them by failing to compensate them for losses that arose during the COVID-19 pandemic. Mt. Hawley asserts that the third amended complaint fails to state a claim and has moved for dismissal. For reasons stated herein, Defendant's Motion to Dismiss [91] is granted.

**I. BACKGROUND**

In evaluating whether Plaintiffs state a legal claim under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). The Court presumes familiarity with, and incorporates by reference, its prior opinion in this case. *Byberry Services & Sols., LLC v. Mt. Hawley Ins. Co.*, 20-CV-03379, 2021 WL 3033612 (N.D.

1

Ill. July 19, 2021) (hereafter "2021 Opinion"). To recap briefly, Byberry Services and Solutions, LLC operates a Snap Fitness Center in Columbus, New Jersey, while JA Fitness 1, LLC and JA Fitness 2, LLC each operate a gym in Ohio. Dkt. 85 ¶¶ 3–6. Mt. Hawley Insurance Company is incorporated in Delaware and its principal place of business is Peoria, Illinois. *Id.* at ¶ 37. Plaintiffs are required to participate in Mt. Hawley's insurance plan under an "all risk policy." *Id.* at ¶ 17. The policies, as discussed in greater detail below, provide business income coverage when there is actual loss of earnings caused by direct physical damage, and coverage when certain losses are the product of government order. *Id.* at ¶¶ 19, 45.

On March 16, 2020, in response to the growing COVID-19 pandemic, the governor of New Jersey ordered that all gyms close that evening. *Id.* at ¶ 97. The next day, the Ohio Department of Health ordered the closure of all non-essential businesses, including gyms, by March 22. *Id.* at ¶ 100 (hereinafter "Orders"). In response to the Orders and the pandemic, the plaintiffs closed their gyms. *Id.* at ¶ 100. Later that year, both states allowed the gyms to open under restricted capacities. In response, Plaintiffs allege they made significant changes to their gyms. *Id.* at ¶¶ 113–16.

On April 1 and April 6 of 2020, Mt. Hawley received claims for loss of income from JA Fitness 1 and 2 and Byberry, respectively. *Id.* at ¶ 138. In May of that year, Mt. Hawley sent letters to the franchisees declining to cover the lost income. *Id.* at ¶¶ 139–140. Plaintiffs then filed a class-action suit in this Court, seeking damages for breach of contract and a declaratory judgment that the Plaintiffs' losses arising

2

from the Orders and the COVID-19 pandemic are covered by the insurance policy. *See* Dkts. 1, 36, 43. In the 2021 Opinion, this Court granted Mt. Hawley's motion to dismiss the second amended complaint and explained that it believed further amendment would be futile but allowed plaintiffs an opportunity to amend. On August 29, 2021, Plaintiffs filed a five count Third Amended Complaint (TAC). Dkt. 85. Mt. Hawley now moves to dismiss the TAC for failure to state a claim. Dkt. 91.

## II. STANDARD

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. ANALYSIS

In their TAC, Plaintiffs seek damages under the Policy's business income and extra expense provisions, civil authority provision, and sue and labor provision. Mt. Hawley argues that none of these provisions apply to losses associated with the COVID-19 pandemic and that recovery is barred by several exclusions in the contract.[1]

In interpreting the contract's language, the parties do not dispute that Minnesota law, where Snap Fitness is headquartered, applies. Under Minnesota law, interpreting an insurance contract is a question of law.[2] *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997). Insurance policies are read as a whole, with unambiguous terms given their plain meaning. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*, 926 F.3d 1014, 1021 (8th Cir. 2019). Ambiguity

---

[1] Because the Court finds that the losses do not fall within the coverage of the policy, it need not address the exclusions.

[2] Plaintiffs contend that determining choice of law is "premature" and that under either Minnesota or Illinois law, its claims should survive. Dkt. 98 at 5. Because Plaintiffs do not identify any relevant differences between those state laws, the Court applies Minnesota law.

4

is construed against the insurer, consistent with the insured's reasonable expectations. *Id*. "An insured party bears the initial burden of demonstrating coverage, and the insurer then bears the burden of establishing an applicable exclusion." *Rest. Recycling, LLC v. Employer Mut. Cas. Co.*, 922 F.3d 414, 417 (8th Cir. 2019) (citing *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013)).

The difference between the Second Amended Complaint and the TAC is that the latter alleges (1) that when droplets of the COVID-19 virus are present on physical surfaces the items become unusable (Dkt. 85 at ¶ 63); (2) that in September 2020, Byberry learned that a COVID-positive member visited the gym in March 2020 prior to the Orders (*id*. at ¶106); (3) COVID forced Plaintiffs to "explore a full-scale replacement" of their ventilation systems (*id*. at ¶ 120); and (4) that property near Plaintiffs' facilities suffered physical loss or damage. (*Id*. at ¶ 135). The TAC repeated an allegation that an employee at JA Fitness 1 and JA Fitness 2 tested positive and quarantined prior to returning to work. (*Id*. at ¶ 107).

For the reasons discussed below, these new allegations do not cure the deficiencies of the prior complaint, requiring dismissal.

A. *Business Income and Extra Expenses*

Mt. Hawley argues that Plaintiffs cannot state a claim for coverage under either the Business Income or Extra Expenses provisions. Dkt. 92 at 14. The Policy's Business Income provision states that Mt. Hawley will provide coverage:

> due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by *direct physical loss of or*

5

> *damage to property* at the location(s) scheduled in this policy, . . . caused by or resulting from a Covered Cause of Loss.

Dkt. 85, Exh. C at 34 (emphasis added). The Expense Coverage provision states that Mt. Hawley will provide coverage for "necessary expenses" incurred from restoration that would not have occurred had there been "no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.*

This Court initially relied on *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021), to find that Plaintiffs' claims for business income failed. *Oral Surgeons* held that that a claim for "direct loss to property" cannot be based on the emergency suspension of facilities. *Id.* at 1145. Since this Court's 2021 Opinion, the Seventh Circuit, in *E. Coast Entm't of Durham, LLC v. Houston Cas. Co. & Am. Claims Mgmt., Inc.,* 21-2947, 2022 WL 1086377 * 2 (7th Cir. Apr. 12, 2022), joined with four other circuits in holding that "that mere loss of use due to COVID-related closures does not constitute 'direct physical loss' when unaccompanied by any physical alteration to property." That strikes the Court as the end of the matter.

Plaintiffs muddy the issue by arguing that the "critical debate" is whether "contamination of the insured properties by COVID-19" is sufficient to constitute direct physical loss. Dkt. 98 at 17. Plaintiffs attempt to bolster this assertion with factual allegations that COVID-19 was physically present, causing direct physical loss to the property. But in *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F. 4th 327, 335 (7th Cir. 2021), the Seventh Circuit held that the virus' presence in a facility is not sufficient to plead "physical loss or damage." The *Sandy Point* court explained that allegations that the virus was present or physically attached itself to a plaintiff's

6

premises is insufficient when the virus did not alter the physical structure of the facility. The Court reasoned that "… [COVID-19's] impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days."[3] *Id.* This reasoning distinguishes Plaintiffs' Minnesota state court cases that did not require structural damage to the property. *See Sentinel Mgmt. Co. v. New Hampshire Ins. Co*, 563 N.W.2d 296 (Minn. Ct. App. 1997) (holding that an asbestos contamination presented the required "injury" to building although not complete loss); *See also Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (holding that the inability to lawfully distribute products because of an illegal pesticide not approved by FDA sufficiently "impaired" function to the premises even though pesticide may not be harmful.).

Plaintiffs' factual allegations also fail to state a plausible claim. Plaintiffs allege that a contamination potentially occurred in a Snap Fitness location in New Jersey when a customer who had the virus entered the facilities in March 2020 *before* the New Jersey Governor's Order. However, Plaintiffs allege that they did not become aware of this contamination until September 2020. Dkt. 85 at ¶ 106. Plaintiffs also allege an employee of the Ohio facilities tested positive for COVID-19, but also report

---

[3] The Court has reviewed Plaintiffs' supplemental authority (Dkt. 107) largely citing district courts denying motions to dismiss because of questions raised as to whether presence of COVID-19 constitutes direct physical loss of or damage. *See e.g., Procaccianti Cos. Inc. et al v. Zurich Amer. Ins. Co.,* No. 1:20-cv-00512-WES-PAS (D.R.I. Sept. 2, 2021); *Novant Health Inc., v. Am. Guar. & Liab. Ins. Co.,* 1:21-CV-309, 2021 WL 4340006 (M.D.N.C. Sept. 23, 2021) and; *Risinger Holdings, LLC et al. v. Sentinel Ins. Co., Ltd. et al.,* 1:20-CV-00176-MJT, 2021 WL 4520968 (E.D. TX. Sept. 30, 2021). However, the Seventh Circuit's recent holding in *E. Coast Entm't of Durham,* binding on this Court, supersedes these cases.

7

the employee quarantined prior to returning to work. *Id.* at ¶ 107. Plaintiffs cannot allege that the New Jersey contamination it was *not aware of* caused the gym to shut down. Not only did Plaintiffs submit the claims at issue *before* learning of this contamination in September 2020, but the claim also did not allege that the contamination resulted in any physical damage to property. It does not appear from the TAC that the Ohio employee who became exposed went to work until after an appropriate quarantine. No rational jury could find that these incidents led to the closures of the facilities. Further, it is not plausible that "[t]he suspension [of Plaintiffs' 'operations'] [were] caused by direct physical loss of or damage to property". See Dkt. 85, Ex. C at 35. *See United Hebrew Congregation of St. Louis v. Selective Ins. Co. of Am.*, 4:20CV892 HEA, 2021 WL 2823213 (E.D. Mo. July 7, 2021), *aff'd*, 21-2752, 2022 WL 1013984 *1 (8th Cir. Apr. 5, 2022) (economic losses not due to direct physical damage or loss did not qualify for business income or extra expense coverage).

For these reasons, Count I (breach of contract based on business expense provision), Count III (breach of contract based on extra expense coverage) and Count V (declaratory judgment on business expense provision) are dismissed.

*B. Civil Authority Claims*

Plaintiffs re-allege, without change, their breach of contract claim based on civil authority coverage. *See* Dkt. 85 at 38 *compared to* Dkt. 43 at 23. This Court previously dismissed this claim because "the plaintiffs do not identify any surrounding properties that were physically damaged and do not establish that that

8

damage led to the state-wide orders" and because "the civil authorities were not motivated by physical damage to property, but by the state-wide health crisis." *Byberry*, 2021 WL 3033612 at *6.

> The civil authority provision provides that Mt. Hawley will:
>
> pay for the loss of earnings and "extra expense" "'earnings' you sustain…caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s) resulted from a Covered Cause of Loss.

Dkt. 85, Exh. C, at 34. Mt. Hawley argues that Plaintiffs fail to allege: (1) the Orders prohibited access to the premises; (2) the Orders were due to direct physical loss or damage to other adjacent properties. Defendants also assert that Plaintiffs cannot establish that there is any causal link between the alleged damage to other properties and the issuance of the orders.

Plaintiffs assert that the definition of "prohibit" within the insurance policy should mean "hinder." Dkt. 98 at 29. Plaintiffs also argue that the Orders were issued "in response to dangerous physical conditions resulting from a Covered Cause of Loss," and the gyms were closed "so the impact of existing and ongoing damage to healthcare facilities could be mitigated." *Id.* at 30. According to Plaintiffs, they are not required to allege physical damage to property as a condition of civil authority coverage. *Id.*

Plaintiffs cannot seek coverage under the Civil Authority provision in the policy. Recent cases authority establishes that a state-wide orders, not caused by the physical damage of property, do not provide a basis for civil authority coverage. *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.,* 508 F. Supp. 3d 249 (N.D. Ill. 2020), aff'd, 19 F.4th 1002 (7th Cir. 2021); *Seifert v. IMT Ins. Co.*, 495 F. Supp. 3d 747, 752

9

(D. Minn. 2020) (holding that when a policy requires a civil authority to close because of physical damage, the plaintiff must plead that the civil authority shut down the property *because* of physical damage); *See also AECOM v. Zurich Am. Ins. Co.*, No. LA CV21-00237 JAK (MRWx), at *9 (C.D. Cal Dec. 1, 2021) ("The civil authority orders temporarily restricted Plaintiff's use of its facilities, but they did not physically alter Plaintiff's property or permanently take property from Plaintiff."); *Valley Health System Inc. v. Zurich American Ins. Co.,* No. BER-L-1907-21, 2021 WL 4958349, at *7 (N.J. Super. L. Oct. 18, 2021) (granting motion to dismiss a claim brought under an insurance policy's civil authority provision because the stay-at-home orders "were not issued in response to any specific physical loss or damage to any identifiable property.")

Mt. Hawley argues that the Orders serve as proof the gyms were not closed because of physical damage to the property, but rather closed due to the pandemic. Dkt. 92 at 15. This Court agrees. Reviewing both the Ohio and New Jersey Orders, it is clear they were issued in response to the pandemic.[4] New Jersey Governor Phil Murphy issued Executive order No. 103 to "respond to the public health hazard posed by Coronavirus disease…" Dkt. 92, Exh. 2. The New Jersey Governor suspended the operation of gyms as part of "the State's mitigation strategy to combat COVID-19 and reduce the rate of community spread." Similarly, on March 22, 2020 Ohio Director of Public Health Amy Acton put a "stay at home" order in place to "prevent[] the spread

---

[4] The Court takes judicial notice of the orders as matters of public record and because they are central to the Plaintiff's claims. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (allowing for judicial notice of public records).

10

of COVID-19 into the State of Ohio." Dkt. 92, Exh. 3. Nowhere do the Orders indicate that gyms must close because they were contaminated or suffered physical damage or loss or because neighboring properties suffered loss or physical damage. Plaintiffs cannot succeed on the claim that the Orders were based on damage at their properties or at surrounding properties. For these reasons, Plaintiffs cannot seek a claim under the Civil Authority coverage. Count II is dismissed.

C. *Sue and Labor Claims*

Plaintiffs re-allege a "sue and labor" claim. Defendant argues that Plaintiffs' claims under this provision fail as the "sue and labor" provisions do not provide actual coverage, but rather just describe what must occur if there is coverage. Dkt. 92 at 27. Additionally, if coverage were to be provided under this clause, Defendant argues that it would only occur when there is direct physical loss or damage, as this Court previously held in its 2021 Opinion. Dkt. 92 at 27 *citing Byberry* at *6. Plaintiffs assert that alleging "incurred expenses associated with taking all reasonable steps to protect" the properties when it complied with the Orders is sufficient to state a claim. Dkt. 98 at 32.

The plain language of the insurance contract between Mt. Hawley and Plaintiffs supports Mt. Hawley's interpretation. The policy lists "duties" Plaintiffs are obligated to complete in the event of loss of earnings such as: notifying the insurer, giving prompt notice to Mt. Hawley, permitting inspection, and resuming operations. Dkt. 85, Exh. C at 36. Nowhere in the provision does it put an obligation on Mt. Hawley to provide coverage.

11

Courts across the country consistently hold the "sue and labor" provisions generally only describe the obligations of the insured seeking coverage and do not provide a basis for coverage. *See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021) (holding that society's understanding of sue and labor clauses is accurate in not providing an independent avenue for coverage); *Berkseth-Rojas DDS, v. Aspen American Insurance Company*, 3:20-CV-0948-D, 2021 WL 2936033 at *6 (N.D. Tex. July 13, 2021) (applying Minnesota law and holding that sue and labor provisions are "best characterized as an obligation on [the insured]."); *JDL Inc. v. Valley Forge Ins. Co.*, 20-CV-02681, 2021 WL 4477914, at *8 (N.D. Ill. Sept. 30, 2021) (holding that sue and labor provisions do not provide coverage, but rather, impose "certain mitigation obligations on the insured when it submits a claim."). This Court sees no reason to detour from the extensive precedent from these COVID-19 cases. Because precedent and the plain language are clear that there is no independent coverage provided by the "sue and labor" provision, Plaintiffs claims are dismissed with prejudice. Count IV is dismissed.

*D. Amendment would be futile*

Plaintiffs have now amended their complaint three times. In light of recent precedent, there is no basis to permit further amendment, and dismissal with prejudice is warranted. "Leave to amend should be freely given, but district courts have broad discretion to deny it where...the amendment would be futile." *Jackson v. Bloomfield Police Dep't*, 764 F. App'x 557, 558 (7th Cir. 2019) (cleaned up). "Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to

amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects." *Haywood*, 887 F.3d at 335. "To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing." *Id*.

## CONCLUSION

For the stated reasons, Mt. Hawley's Motion to Dismiss [91] is granted. This case is dismissed with prejudice. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiffs. Civil case terminated.

E N T E R:

Dated: May 4, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge